Katherine Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW, LLP
915-2 Battery Street, 2d Floor
San Francisco, CA 94111
Telephone: (415) 590-2340
Facsimile:  (415) 445-0908

Marc J. Zwillinger (*pro hac vice pending*)
marc@zwillgen.com
Jacob A. Sommer (*pro hac vice pending*)
jake@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone:  (202) 296-3585
Facsimile:  (202) 706-5298

Attorneys for Defendant
FANDUEL, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHAEL SIDISIN JR AND MAYSAM SALEPHOUR individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FANDUEL, INC., a Delaware Corporation and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:15-cv-00873<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANT FANDUEL, INC. TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: March 30, 2015<br>Time: 1:30 p.m.<br>Courtroom: 840<br>Judge: Hon. Dale S. Fischer |

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on Monday, March 30, 2015, at 1:30 p.m., or as soon thereafter as counsel may be heard, by the Honorable Dale S. Fischer in Courtroom 840 of the above-captioned court, located at 255 East Temple Street, Los Angeles, CA 90012, Defendant FanDuel, Inc. will, and hereby does, move the Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, for an order: (1) compelling Plaintiffs Michael Sidisin and Maysam Salephour to individually arbitrate their claims against FanDuel pursuant to their written arbitration agreement with FanDuel; (2) dismissing Plaintiff's class and representative claims; and (3) staying the action pending the arbitration of Plaintiffs' individual claims.

This petition is made on the ground that Plaintiffs entered into a valid and enforceable contract providing that disputes shall be resolved by arbitration in accordance with the Federal Arbitration Act, and on the grounds that the agreement does not authorize Plaintiffs to pursue any claims on a representative basis in arbitration or otherwise.

This petition is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Mike Kuchera and exhibits filed concurrently herewith, all papers and pleadings filed by the parties herein, all papers lodged with the Court, and such further evidence and arguments as may be presented at the hearing on this petition.

/ / /

/ / /

2

This petition is made following a conference of counsel pursuant to Local Rule 7-3, which took place on February 10, 2015.

**ZWILLGEN LAW LLP**

Dated:  February 12, 2015

By:   /s/ Katherine M. Robison
Katherine M. Robison (SBN 221556)
kat@zwillgen.com
ZWILLGEN LAW LLP
915-2 Battery Street, Suite 3
San Francisco, California 94111
Telephone:  (415) 590-2340
Facsimile:  (415) 445-0908

Marc J. Zwillinger
marc@zwillgen.com
Jacob A. Sommer
jake@zwillgen.com
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone:  (202) 296-3585
Facsimile:  (202) 706-5298

# <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ...................................................................1

**BACKGROUND** ....................................................................................3

    I.   Registering with FanDuel. ..........................................................3

    II.  The Terms of Use and Arbitration Provision. ............................4

    III. The Current Action.....................................................................7

**ARGUMENT** ........................................................................................8

    I.   Legal Standard. ...........................................................................8

    II.  New York Law Applies to Determine Whether the Arbitration
        Provision Is Enforceable. ...........................................................

    III. The Arbitration Provision Is Enforceable
        under New York Law. ...............................................................10

        A. Plaintiffs' use of FanDuel's Services Involved Interstate
           Commerce......................................................................11

        B. The Parties' Agreement to Arbitrate Is Valid Under
           General Principles of Contract Law. ................................12

         1. The Parties Entered Into an Agreement..............................12

         2. Plaintiffs' Claims Fall Within the Arbitration Agreement ..14

    IV. The Arbitration Provision Mandates Individual, Not Class,
        Arbitration of Claims.................................................................15

    V.   This Action Should be Dismissed, or at the Least Stayed,
        Pending Resolution of Plaintiffs' Individual Arbitration Against
        FanDuel.....................................................................................16

**CONCLUSION**................................................................... 17

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES         Case No. 2:15-cv-00873

# **TABLE OF AUTHORITIES**

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 256 (1995) ................................................................................11

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) .........................................................11

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) .......................................................................8, 16

*Campos v. Campos Family Farms, LLC*,
   No. 1:12-CV-00598, 2012 WL 2090303 (E.D. Cal. June 8, 2012) ...................10

*Crawford v. Beachbody, LLC*,
   No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 4, 2014) .........................10

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) .................................................................................8

*Doctor's Associates, Inc. v. Casarotto*
   517 U.S. 681(1996) ...............................................................................10

*Express Indus. and Term. Corp. v. New York State Dept. of Transp.*,
    93 N.Y.2d 584 (1999) ............................................................................12

*Fteja v. Facebook*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....................................................13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ..................................................................................9

*Han v. Samsung Telecommunications America, LLC*,
   No. CV 13-3823, 2013 WL 7158044 (C.D. Cal. Dec. 16, 2013) ....................10

*Harris v. Bingham McCutchen LLP*,
   214 Cal. App. 4th 1399 (2013) ...............................................................9

*Hines v. Overstock.com, Inc.*,
   380 Fed. Apprx. 22 (2d Cir. 2010) .........................................................12

*HG Estate, LLC v. Corporacion Durango*,
   271 F. Supp. 2d 587 (S.D.N.Y.2003) ....................................................17

*Hoffman v. Citibank (South Dakota), N.A.*,
   546 F.2d 1078 (9th Cir. 2008) ...........................................................9, 10

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ii

*JLM Indus., Inc. v. Stolt-Nielsen S*A,
   387 F.3d 163 (2d Cir. 2004) ...............................................................15

*Khanna v. American Express Co*.,
   No. 11 CIV. 6245 JSR, 2011 WL 6382603 (S.D.N.Y. Dec 14, 2011) ..............16

*Mehler v. Terminix Int'l Co*.,
    205 F.3d 44 (2d Cir. 2000) ...........................................................12, 14

*Milgrim v. Backroads, Inc*.,
   142 F. Supp. 2d 471 (S.D.N.Y. 2001) .................................................17

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*.,
   460 U.S. 1 (1983) ......................................................................8, 15

*Oldroyd v. Elmira Sav. Bank*,
   134 F.3d 72 (2d Cir. 1998) ..............................................................14

*Prima Paint Corp. v. Flood & Conklin Mfg. Co*.,
   388 U.S. 395 (1967) .....................................................................11

*Rodriguez de Quijas v. Shearson/American Express*,
   490 U.S. 477 (1989) ......................................................................8

*Samaniego v. Empire Today LLC*,
   205 Cal. App. 4th 1138 (2012) ..........................................................10

*Shetiwy v. Midland Credit Mgmt*.,
   959 F.Supp.2d 469 (S.D.N.Y. 2013) ...................................................16

*Simula, Inc. v. Autoliv, Inc*.,
   175 F.3d 716 (9th Cir. 1999) ............................................................10

*Stark v. Gilt Groupe, Inc*.,
   No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ..... *passim*

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp*.,
   559 U.S. 662 (2010) .....................................................................16

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ*.,
   489 U.S. 468 (1989) .....................................................................15

*Wash. Mut. Bank, FA v. Superior Court*,
   24 Cal. 4th 906 (2001) ..................................................................10

*Zinser v. Accufix Research Inst., Inc*.,
   253 F.3d 1180 (9th Cir. 2001) ............................................................9

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

iii

**Other Authority**

9 U.S.C. § 1 ...................................................................................11

9 U.S.C. § 2 ....................................................................................8

9 U.S.C. § 3 ...................................................................................17

9 U.S.C. § 4 ....................................................................................8

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

## MEMORANDUM IN SUPPORT OF MOTION

Defendant FanDuel, Inc. ("FanDuel") respectfully submits this memorandum of law in support of its motion to compel arbitration of the claims asserted by plaintiffs Michael Sidisin and Maysam Salephour ("Plaintiffs") in their First Amended Class Action Complaint ("Complaint").

## PRELIMINARY STATEMENT

Before entering a relationship with FanDuel, each Plaintiff agreed that any dispute arising from the parties' relationship would be resolved through arbitration. Both the FanDuel Terms of Use to which Plaintiffs assented and the Arbitration Clause contained therein are plainly enforceable under New York law, Plaintiffs claims fall squarely within the scope of the arbitration clause, and Plaintiffs chose not to exercise their right to opt-out of the Arbitration provision. In direct contravention of their agreement, Plaintiffs elected to file their claims as a purported class action in federal court, rather than initiating individual arbitration in a location convenient for them. Accordingly, this Court should compel Plaintiffs to arbitrate their claims against FanDuel in their individual capacity and dismiss this case.

- *Plaintiffs assented to a valid and enforceable binding arbitration provision.* FanDuel operates an internet website that allows users to participate in daily fantasy sports contests. In order to participate in FanDuel's contests, all users must first register an account with FanDuel. When Plaintiffs clicked the button to register their accounts with FanDuel, they expressly agreed that FanDuel's Terms of Use

- 1 -

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

would govern their use of FanDuel's service. Those Terms of Use included a clear and conspicuous binding arbitration provision requiring that all disputes between users and FanDuel not remedied informally be resolved via arbitration before the American Arbitration Association ("AAA"), and not in court. This same provision also made clear that FanDuel and users can only bring actions in their individual capacity, and not as part of a purported class. FanDuel provided an unavoidable notice of these provisions to Plaintiffs, including through a bold warning at the top of the Terms of Use page. Finally, FanDuel's Terms of Use gave Plaintiffs the option to opt-out of the binding arbitration and class action waiver provisions, but Plaintiffs chose not to do so. Thus, a valid arbitration agreement between FanDuel and Plaintiffs exists.

- *Plaintiffs' claims regarding FanDuel's deposit promotion fall squarely within the arbitration provision.* By its terms, the arbitration provision applies to "[a]ll claims arising out of or relating to the[] Terms [of Use] . . . the parties relationship with each other and/or [users'] use of the Service[s]." Plaintiffs claim that they believed that they would receive additional credit from FanDuel upon registering, a claim that relates both to the parties' relationship and Plaintiffs' use of FanDuel's service. As the Supreme Court has made clear, arbitration and class action waiver provisions like those at issue here should be enforced.

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

### **BACKGROUND**

### I. **Registering with FanDuel.**

FanDuel is a Delaware corporation with headquarters in Manhattan, New York. First Amended Class Action Complaint ("Compl.") ¶ 16. FanDuel offers one-day, Internet-based fantasy sport games on its website, fanduel.com. *Id.* ¶ 2. According to Plaintiffs, FanDuel offers its service "throughout all fifty states." *Id.* ¶ 16. All users must create a FanDuel account before they are eligible to play. *Id.* ¶ 2. Plaintiff Michael Sidisin created his account on September 25, 2014. (Declaration of Mike Kuchera in Support of FanDuel's Motion to Compel Arbitration ("Decl.") at ¶ 1.) Plaintiff Maysam Salephour created his account on September 20, 2014. *Id.*

To register their accounts, Plaintiffs would have first navigated to FanDuel's website, www.fanduel.com or used the mobile application to access FanDuel's service. (Decl. ¶ 5.) They then would have had to click on the "Join Now" button on FanDuel's homepage or the "Click Here" prompt on the upper-right of the homepage under the phrase "heard of us on radio or TV?" (Decl. ¶ 6.) In addition to the homepage, every other page of FanDuel's website has a "Join" button in the upper-right hand corner of the page. (*Id.*) By clicking on any of these buttons, Plaintiffs would have been presented with a form to fill out.  (Decl. ¶ 8.) In order to register their account, each Plaintiff was required to enter their name, email address, and desired FanDuel username and password into this form, and then click the "Play Now," "Join Now," or "Sign Up" button. (Decl. ¶ 9.) The registration form includes a space to enter a "promo code" and a prominent notification that states: "By signing

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." (Decl. ¶ 8 & Ex. 4.) The phrase "Terms of Use" is in bold and hyperlinked to take an individual to FanDuel's Terms of Use at www.fanduel.com/terms. (*Id*.)

**II. The Terms of Use and Arbitration Provision.**

At the time each Plaintiff registered their account, FanDuel included the following notification at the very top of the page displaying its Terms of Use, before presenting the individual terms: "**IMPORTANT NOTICE**: THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION AND A WAIVER OF CLASS ACTION RIGHTS AS DETAILED IN SECTION 15." (Ex. 5, Decl. ¶ 10, at 1.) This notification was followed by the individually titled sections of the Terms of Use. Section 1 of the Terms of Use was titled "Acceptance of terms." (*Id*.) It stated that "[b]y using or otherwise accessing the Services, or clicking to accept or agree to these terms . . . you (1) accept or agree to these Terms and our additional Rules and Scoring system." (*Id*.) Additional sections, including "Eligibility," "Game Rules," and "Conduct" followed. The "Game Rules" section of the Terms of Use included a sub-section on "Bonuses and Promotions," where FanDuel explained that it "frequently offer[s] bonuses to newly depositing users and for other marketing purposes." (*Id*. at 8.)

Section 15 of the Terms of Use, titled "Binding Arbitration and class action waiver," addresses the procedure for resolving potential disputes between FanDuel and users. Significantly, the preamble to the Section includes the following statement: "PLEASE READ THIS SECTION CAREFULLY – IT MAY

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES | Case No. 2:15-cv-00873

SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT." (Ex. 5, Decl. ¶ 10, at 16.) In a subsection titled "Initial Dispute Resolution," FanDuel and users agree that they "shall use their best efforts . . . to settle any dispute, claim, question, or disagreement" and participate in "good faith" negotiations, as a condition to initiating a lawsuit or arbitration. Plaintiffs did not initiate such informal dispute resolution nor did they seek good faith negotiations with FanDuel regarding their claims. (*Id*.)

The arbitration provision requires that "either party may initiate binding arbitration as the sole means to resolve claims" thirty (30) days after filing an informal dispute under the Initial Dispute Resolution provision and failing to agree to a solution. (Ex. 5, Decl. ¶ 10, at 16.) This binding individual arbitration is to be administered by the AAA in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer related disputes, excluding any rules or procedures governing or permitting class actions. (*Id*. at 16-17.) For United States citizens like Plaintiffs, the Terms of Use state that the "arbitration will take place at any reasonable location within the United States convenient for you," with "you" referring to the user. (*Id*. at 17.) FanDuel also agrees to pay all of the actual filing and arbitrator fees for claims not exceeding $75,000. (*Id*. at 17.)

With respect to scope, the mandatory arbitration provision explains that it applies to "all claims arising out of or relating to these Terms (including their

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

- 5 -

formation, performance and breach), the parties' relationship with each other and/or [users'] use of the Service." (Ex. 5, Decl. ¶ 10, at 16.) It then enumerates several limited exceptions for actions relating to intellectual property rights such as patents, copyrights, and trade secrets. (*Id*. at 18.) Section 15 also states that "[e]ither party may also seek relief in a small claims court for disputes or claims within the scope of that court's jurisdiction." (*Id*.)

Section 15 of FanDuel's Terms of Use also includes a provision limiting the ability of users and FanDuel to assert or participate in class action lawsuits. Specifically, Section 15 states that users and FanDuel "agree that any arbitration shall be conducted in their individual capacities only and not as a class action or other representative action, and the parties expressly waive their right to file a class action or seek relief on a class basis." (Ex. 5, Decl. ¶ 10, at 17.) Then, in all capital letters the terms state that "YOU AND FANDUEL AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." (*Id*.)

Under a sub-heading "30-Day Right to Opt Out," Section 15 notified Plaintiffs that they "have the right to opt-out and not be bound by the arbitration and class action waiver provisions." (Ex. 5, Decl. ¶ 10, at 18.) It also explains exactly how to accomplish such an opt-out—by sending written notice to the address provided by FanDuel. (*Id*.) The terms went on to explain that the opt-out must be sent within 30 days of the user's first use of the service. Here, neither Plaintiff

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

Sidisin nor Plaintiff Salephour sent an opt-out notice to FanDuel. (Decl. ¶ 13.)

Plaintiff Sidisin's 30-day period ended on October 25, 2014 and Plaintiff

Salephour's 30-day period ended on October 20, 2014.

Section 15 also includes a contractual choice of law provision, which states:

"[t]he Terms and the relationship between you and FanDuel shall be governed by

the laws of the State of New York without regard to conflict of law provisions." (Ex.

5, Decl. ¶ 10, at 18.)

### III.   The Current Action.

On December 3, 2014, Plaintiffs filed an initial Class Action complaint in the

Superior Court of California, County of Los Angeles, but did not serve that

complaint on FanDuel. (Decl. ¶ 14.) On January 6, 2015, Plaintiffs filed a First

Amended Class Action Complaint, and served that complaint on FanDuel's agent

for service in California on January 8, 2015. (*Id*.) Plaintiffs allege three causes of

action. The first and second causes of action are for false and misleading advertising

in violation of California Business & Professional Code Sections 17200, *et. seq*.

(Unfair Competition Law) and 17500, *et. seq*. (False Advertising Law), respectively.

The third cause of action is for violation of the California Consumer Legal

Remedies Act, California Civil Code Section 1750, *et. seq*. Plaintiffs seek various

forms of relief, including restitution and injunctive relief and seek to represent a

class of California consumers.

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

## ARGUMENT

## I.    Legal Standard.

Section 2 of the Federal Arbitration Act ("FAA" or "the Act"), 9 U.S.C. § 2, provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The Act embodies the "liberal federal policy favoring arbitration" as an alternative dispute resolution mechanism and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *see also Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 480-81 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA, by its terms "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Where one party fails, neglects, or refuses to arbitrate under a written agreement for arbitration, the other party "may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Importantly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp., 460 U.S. at 24. And the party seeking to avoid arbitration has the burden of showing that the arbitration provision is unenforceable. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).

## II.   New York Law Applies to Determine Whether the Arbitration Provision Is Enforceable.

The Terms of Use include a choice of law provision specifying that New York law applies to "[t]he terms" and "the relationship between" the parties. And the arbitration provision is a term of the parties' agreement. As the forum state, California's rules govern the threshold determination of whether the choice of law provision in FanDuel's Terms of Use should be given effect. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("Federal courts sitting in diversity use the choice-of-law rules of the forum state . . . to make a choice-of-law determination."). California law dictates enforcement of FanDuel's choice of law provision.

"California strongly favors enforcement of choice-of-law provisions, and its courts have upheld application of other states' internal statutes, rules and laws to arbitration contracts." *Harris v. Bingham McCutchen LLP,* 214 Cal. App. 4th 1399, 1404 (2013); *see also Hoffman v. Citibank (South Dakota), N.A.*, 546 F.2d 1078, 1082 (9th Cir. 2008) (stating that the key inquiry is "whether the chosen state's law is contrary to a fundamental policy of California"). Choice-of-law provisions, including those contained in consumer contracts, are generally respected unless the

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

- 9 -

party seeking to avoid the provision can show that failure to apply California law would result in "substantial injustice." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1148 (2012); *Wash. Mut. Bank, FA v. Superior Court,* 24 Cal. 4th 906, 915–16 (2001); *Hoffman*, 546 F.3d at 1082. Where the arbitration provision would be equally enforceable under California law, failing to apply California law cannot result in substantial injustice. *See, e.g., Han v. Samsung Telecommunications America, LLC*, No. CV 13-3823, 2013 WL 7158044, at *7 (C.D. Cal. Dec. 16, 2013) (finding enforcement of contractual choice of law provision calling for Texas law especially appropriate where "California law itself would also arguably permit enforcement of the arbitration clause here"). Here, since the arbitration provision is equally enforceable under California and New York law,[1] Plaintiffs will not suffer any "substantial injustice" if New York law applies.

## III.  The Arbitration Provision Is Enforceable under New York Law.

Courts in the Second Circuit will compel arbitration as long as the arbitration agreement is (1) part of a contract or transaction involving interstate commerce and (2) valid under general principles of contract law. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 682 (1996). The agreement between Plaintiffs and

---

[1] In California the analysis is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). The agreement here meets both requirements. *See, e.g., Crawford v. Beachbody, LLC*, No. 14cv1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 4, 2014) (plaintiff bound by terms where she was required to click box to "Place Order" immediately above language "By clicking *Place Order* below, you are agreeing that you have read and understand the [Terms and Conditions]"); *Campos v. Campos Family Farms, LLC*, No. 1:12-CV-00598, 2012 WL 2090303, at *10 (E.D. Cal. June 8, 2012) (arbitration agreement covering "any and all disputes" over "terms and implementation" of agreement covered claims even though plead as trademark infringement, unfair competition, interference with economic advantage, fraud,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

- 10 -

FanDuel satisfies both requirements.

### A. Plaintiffs' Use of FanDuel's Services Involved Interstate Commerce.

Plaintiffs' use of FanDuel's internet website to participate in daily fantasy games involves interstate commerce. The FAA defines "commerce" as "commerce among the several States or with foreign nations …." 9 U.S.C. § 1. As the Supreme Court has explained, Congress intended the FAA to apply to the farthest reach of the Commerce Clause, to any transaction directly or indirectly affecting interstate commerce. *See, e.g.*, *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 256, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). There can be little dispute that Plaintiffs' claims here involve interstate commerce. Indeed, Plaintiffs themselves allege that FanDuel offers its services through its internet site throughout all fifty states. Compl. ¶ 16. And Plaintiffs seek to represent a class of persons who purchased a fantasy product in California from FanDuel in New York. *Id.* ¶ 24. Moreover, courts have long recognized the "inescapable conclusion" that the Internet is an instrument of interstate commerce. *See, e.g., Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 173 (S.D.N.Y. 1997) (noting that the Internet "is wholly insensitive to geographic distinctions" and that "[i]n almost every case, users of the Internet neither know nor care about the physical location of the Internet resources they access.").

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

and breach of fiduciary duty).

**B. The Parties' Agreement to Arbitrate Is Valid Under General Principles of Contract Law.**

**1.  The Parties Entered Into an Agreement.**

Plaintiffs and FanDuel entered into an agreement to arbitrate. To determine whether the parties in fact have agreed to arbitrate, courts generally look to state contract law. *See Mehler v. Terminix Int'l Co.,* 205 F.3d 44, 48 (2d Cir. 2000). Under New York law, contracts are created when the parties demonstrate mutual assent to all material terms. *Express Indus. and Term. Corp. v. New York State Dept. of Transp.*, 93 N.Y.2d 584, 589 (1999). This principle extends to agreements made over the internet, where "binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance." *Stark v. Gilt Groupe, Inc.*, No. 13 CIV.5497 LLS, 2014 WL 1652225, slip op. at *2 (S.D.N.Y. Apr. 24, 2014) (citing *Hines v. Overstock.com, Inc.*, 380 Fed. Apprx. 22, 25 (2d Cir. 2010)).

Here, Plaintiffs meet these criteria. To register an account with FanDuel, each plaintiff filled out a form and clicked "Join Now" or "Play Now." Immediately below where each plaintiff clicked, he was informed by conspicuous text that "[b]y signing up, you confirm that you are at least 18 years of age and agree to the **Terms of Use**." The phrase "Terms of Use" is in bold and links directly to FanDuel's full Terms of Use, which makes clear to prospective users in multiple locations that they are agreeing to arbitrate any disputes they might have with FanDuel. This

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

ZWILLGEN LAW LLP
915.2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

affirmative action – clicking on the "Join Now" or "Play Now" button – is sufficient to demonstrate express consent.

Numerous courts applying New York Law have found contractual assent in similar situations. For example, in *Fteja v. Facebook,* 841 F. Supp. 2d 829 (S.D.N.Y. 2012), the plaintiff opposed Facebook's invocation of the forum selection clause in its terms of use on the ground that there was no proof he agreed to those terms. *Id.* at 834. Facebook countered that a potential user "cannot become an actual Facebook user unless and until they have clicked through the registration page where they acknowledge they have read and agreed to Facebook's terms of use. *Id.* Specifically, Facebook explained that to sign up for Facebook, prospective users had to click a "Sign Up" button "immediately below" which the following sentence appeared: "By clicking Sign-Up, you are indicating that you have read and agree to the Terms of Service." *Id.* at 835. The phrase "Terms of Service" was underlined and hyperlinked to the webpage with the full Terms of Service. *Id.* The court found this sufficient to demonstrate assent, reasoning that plaintiff "was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough." *Id.* at 840.

Likewise, in *Stark v. Gilt Groupe, Inc.*, No. 13 CIV.5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014), plaintiff opposed defendant Gilt Group's invocation of a mandatory arbitration provision on the ground that he allegedly "never effectively agreed to it." *Id.* at *2. Gilt's sign-up process involved a sign up box featuring a "Shop Now" button accompanied by statements that "consumer will

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

become a Gilt member and agrees to be bound by the Terms of Membership" and

"By joining Gilt through email or Facebook signup, you agree to the Terms of

Membership for all Gilt Group Sites." *Id.* at *1. According to the court, within that

sign-up box, one mouse-click brought users to Gilt's full terms and conditions. The

court found this sufficient for assent. Specifically, the court explained that when

plaintiff "clicked 'Shop Now' he was informed that by doing so, and giving his

email address, you agree to the Terms of Membership." *Id.* at *3. And that

regardless of whether he actually read the contract terms "[plaintiff] was directed

exactly where to click in order to review those terms, and his decision to click the

'Shop Now' button represents his assent to them." *Id.*

So too here. Plaintiffs clicked the "Join Now" or "Play Now" button after

being informed that by doing so they were consenting to the terms, which they were

directed to via hyperlink. This is sufficient to bind them to those terms.

### 2.  Plaintiffs' Claims Fall Within the Arbitration Agreement.

Plaintiffs' claims against FanDuel fall within the broad arbitration provision

in FanDuel's Terms of Use. The arbitration provision applies to "all claims arising

out of or relating to the[] Terms (including their formation, performance and

breach), the parties' relationship with each other and/or [users'] use of the Service."

It is well settled that a broad arbitration provision such as this one requires

arbitration of "[a]ny dispute, controversy or claim arising under or in connection

with" the contract, and "justifies a presumption of arbitrability." *Oldroyd v. Elmira

Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998); *see also Mehler v. Terminix Int'l Co.*,

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

205 F.3d 44, 49 (2d Cir. 2000) ("Any controversy or claim between [the parties] arising out of or relating to" the contract is a broad arbitration clause). And that any questions about the clause "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Plaintiffs' claims arise out of and relate to Plaintiffs' use of FanDuel's service as they stem from Plaintiffs registering with FanDuel and making an initial deposit in order to play fantasy contests FanDuel offers. Moreover, promotions, including the deposit match promotion Plaintiffs complain about, are specifically referred to in Section 5 of FanDuel's terms of use. As such, Plaintiffs' claims fall squarely within the arbitration provision. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) ("We have said that [i]f the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them."); *see also Stark*, 2014 WL 1652225, at *1 (ordering arbitration of claims for deceptive business practices and false advertising stemming from online retailer Gilt's claims that certain products were made of Bamboo fiber).

## IV.   The arbitration Provision Mandates Individual, Not Class, Arbitration of Claims.

This Court should also order arbitration on an individual, not class basis. The FAA's primary purpose is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Parties can agree which

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

issues to arbitrate, who will arbitrate them, and with whom they arbitrate their disputes. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 682 (2010); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011). "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 559 U.S. 662, 683 (2010) (emphasis in original). Conversely, courts should compel the parties to individual arbitration where an enforceable arbitration provision requires the parties to arbitrate in their individual capacity. *AT&T Mobility LLC*, 131 S. Ct. at 1753 (finding California Supreme Court's decision in *Discover Bank v. Superior Court*, which created rule allowing class action waivers in arbitration provisions to be found unconscionable, preempted by FAA); *see also Shetiwy v. Midland Credit Management*, 959 F.Supp.2d 469, 475-76 (S.D.N.Y. 2013); *Khanna v. American Express Co*., No. 11 CIV. 6245 JSR, 2011 WL 6382603, at *4 (S.D.N.Y. Dec 14, 2011).

Here, the arbitration provision in FanDuel's Terms of Service requires the parties to arbitrate in their individual capacity, not on a class basis. Plaintiffs agreed to this provision and did not opt out of it despite the opportunity to do so. Thus, the court should enforce the provision and compel each plaintiff to arbitrate his disputes in his individual capacity with FanDuel.

**V.     This Action Should Be Dismissed, or at the Least Stayed, Pending Resolution of Plaintiffs' Individual Arbitration Against FanDuel.**

When ordering arbitration, courts "shall on application of one of the parties

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

1  stay the trial of the action until such arbitration has been had in accordance with the

2  terms of the agreement." 9 U.S.C. § 3. Where, like in the instant case, the issues in

3  the case are properly subject to arbitration, the Court must order a stay. *HG Estate,*

4  *LLC v. Corporacion Durango S.A. De de C.V.,* 271 F. Supp. 2d 587, 596

5  (S.D.N.Y.2003) (noting that Section 3 of the FAA mandates a stay of litigation if the

6  issue involved is subject to arbitration). This Court may also exercise its discretion

7

8  to dismiss the action in its entirety. *Milgrim v. Backroads, Inc.*, 142 F. Supp. 2d 471,

9  476 (S.D.N.Y. 2001) ("Although Section 3 of the FAA requires a federal court to

10  stay an action to resolve a dispute subject to an arbitration agreement, courts have

11  the discretion to dismiss rather than stay an action when all of the issues in it must

12  be arbitrated.").

13

14          FanDuel therefore respectfully requests that, in addition to compelling

15  individual arbitration of Plaintiffs' claims against it, the Court dismiss this action in

16  its entirety. Alternatively, the Court should issue a stay of this matter pending the

17  completion of such arbitration.

18

19                                        **CONCLUSION**

20          When Plaintiffs registered with FanDuel, they agreed to FanDuel's Terms of

21  Use. That agreement clearly and unambiguously requires both parties to submit

22  claims arising out of their use of FanDuel, including claims of the type at issue here,

23  to arbitration on an individual basis. The FAA and binding precedent require

24  enforcement of such clear and unambiguous agreements to arbitrate. Accordingly,

25  FanDuel respectfully requests that the Court order arbitration on an individual basis

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES                          Case No. 2:15-cv-00873

as the parties agreed and dismiss this action in its entirety. In the alternative,

FanDuel respectfully requests that the Court compel Plaintiffs to arbitrate their

claims on an individual basis and stay those claims pending such arbitration.

**ZWILLGEN LAW LLP**

Dated:  February 12, 2015                    By:   /s/ Katherine M. Robison
                                             Katherine M. Robison (SBN 221556)
                                             kat@zwillgen.com
                                             ZWILLGEN LAW LLP
                                             915-2 Battery Street, Suite 3
                                             San Francisco, California 94111
                                             Telephone:  (415) 590-2340
                                             Facsimile:  (415) 445-0908

                                             Marc J. Zwillinger
                                             marc@zwillgen.com
                                             Jacob A. Sommer
                                             jake@zwillgen.com
                                             ZWILLGEN PLLC
                                             1900 M Street NW, Suite 250
                                             Washington, DC 20036
                                             Telephone:  (202) 296-3585
                                             Facsimile:  (202) 706-5298

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873

1

ZWILLGEN LAW LLP
915-2 BATTERY STREET, SUITE 3
SAN FRANCISCO, CALIFORNIA 94111
(415) 590-2335

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2015, I authorized the electronic filing of the foregoing documents, **NOTICE OF MOTION AND MOTION BY DEFENDANT FANDUEL, INC. TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**, with the Clerk of the Court using the CM/ECF system to be served on the parties by electronic transmission and via Personal Service to the non-CM/ECF participants indicated below:

Mark A. Milstein
Sarah L. Gough
MILSTEIN ADELMAN, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405
Tel: (310) 396-9600
Fax: (310) 396-9635

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 12, 2015.


**ZWILLGEN LAW LLP**


By:  /s/ Katherine M. Robison
　　　Katherine M. Robison (SBN 221556)
　　　ZWILLGEN LAW LLP
　　　915-2 Battery Street, Suite 3
　　　San Francisco, California 94111
　　　Telephone:  (415) 590-2340
　　　Facsimile:  (415) 445-0908
　　　kat@zwillgen.com

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No. 2:15-cv-00873